JOAN B. TUCKER FIFE (SBN: 144572)
jfife@winston.com
RACHEL A. D. BUSCH (SBN: 327939)
rbusch@winston.com
WINSTON & STRAWN LLP
101 California Street, 35th Floor
San Francisco, CA 94111
Telephone: (415) 591-1000
Facsimile: (415) 591-1400

EMILIE C. WOODHEAD (SBN: 240464)
ewoodhead@winston.com
TRISTAN R. KIRK (SBN: 313262)
tkirk@winston.com
WINSTON & STRAWN LLP
333 South Grand Avenue, Suite 3800
Los Angeles, CA 90071
Telephone:  (213) 615-1700
Facsimile:   (213) 615-1750

Attorneys for Defendants
U.S. BANK NATIONAL ASSOC. and
U.S. BANCORP

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORIN DEAN HASKIN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>U.S. BANK N.A. dba U.S. Bank; U.S. BANCORP, a Delaware Corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. **'22CV0924 BEN AGS**<br><br>**(San Diego Superior Court Case No. 37-2022-00015917-CU-OE-CTL)**<br><br>**DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT**<br><br>Complaint Filed: April 28, 2022 |

**TO PLAINTIFF AND HIS ATTORNEYS OF RECORD AND TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA:**

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. § 1332, Defendants U.S. Bank National Association and U.S. Bancorp ("Defendants") hereby remove the above-captioned matter from the Superior Court of the State of California in and for the County of San Diego, to this Court. In support of its request, Defendants state as follows:

## I.    INTRODUCTION

1.    This case is hereby removed from state court to federal court pursuant to 28 U.S.C. § 1332 because: 1) complete diversity of citizenship exists between the parties; 2) the claims of Plaintiff Lorin Dean Haskin ("Plaintiff") exceed $75,000.00, exclusive of interest and costs; and 3) this Court is in the judicial district and division embracing the place where the state court action was initiated and is pending. Therefore, this Court has original jurisdiction under 28 U.S.C. § 1332(a).

## II.    VENUE

2.    The action was filed in the Superior Court for the State of California, County of San Diego. Venue therefore properly lies in the United States District Court for the Southern District of California pursuant to 28 U.S.C. §§ 84(c), 1391(a), and 1441(a).

## III.    THE STATE COURT ACTION IN THIS CASE

3.    On April 28, 2022, an action was commenced in the Superior Court of the State of California in and for the County of San Diego entitled *Lorin Dean Haskin v. U.S. Bank, N.A. dba U.S. Bank et. al.*, Case No. 37-2022-00015917-CU-OE-CTL. Service of the Summons and Complaint was effected on May 26, 2022, the date on which Defendants returned the Notice and Acknowledgment of Receipt of Summons and Complaint pursuant to California Code of Civil Procedure § 415.30.  A true and correct copy of the Summons and Complaint, and the executed Notice and

1  Acknowledgment of Receipt of Summons and Complaint are attached hereto as
2  Exhibit "A."

3      4.    The Complaint alleges claims for: (1) Failure to Pay Regular and
4  Overtime Wages [Cal. Labor Code §§ 510, 1194; IWC Wage Order No. 4-2001];
5  (2) Failure to Pay Meal Periods [Cal. Labor Code §§ 226.7, 512; and IWC Wage
6  Order No. 4-2001(11)(B)]; (3) Failure to Pay Rest Periods [Cal. Labor Code § 226.7;
7  and IWC Order No. 4-2001(12)(B)]; (4) Failure to Provide Accurate Itemized Wage
8  Statements [Cal. Labor Code § 226 (a)]; (5) Failure to Maintain Accurate Records
9  [Cal. Labor Code§ 1174(d); and IWC Wage Order No. 4-2001(7)(A)(3)]; (6) Failure
10  to Reimburse Business-Related Expenses [Cal. Labor Code § 2802; IWC Wage Order
11  No. 4-2001(9)(B)]; (7) Unfair and Unlawful Business Practices [Cal. Bus. & Prof.
12  Code § 17200, *et seq.*]; (8) Retaliation [Cal. Labor Code § 98.6]; (9) Retaliation [Cal.
13  Labor Code § 1102.5.] (Compl. ¶¶ 42-113.)

14      5.    On June 22, 2022, Defendants U.S. Bank National Association and U.S.
15  Bancorp timely filed their Answer to the Complaint in state court. A true and correct
16  copy of this Answer is attached hereto as Exhibit "B."

17  **IV.**   **JOINDER**

18      6.    Defendants are not aware of any other defendant having been served with
19  a copy of Plaintiff's Complaint.

20  **V.**   **BASIS FOR FEDERAL JURISDICTION UNDER 28 U.S.C. § 1332**

21      7.    The Court has original jurisdiction over this action because it is an action
22  between citizens of different states involving an amount in controversy that exceeds
23  $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a); 28 U.S.C. § 1441(a).

24      **A.**   **Plaintiff is a Citizen of California.**

25      8.    To establish citizenship for diversity purposes, a natural person must be
26  both: (a) a citizen of the United States, and (b) a domiciliary of one particular state.
27  *See Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). "A
28  person's domicile is [his] permanent home, where [he] resides with the intention to

1  remain or to which [he] intends to return." *Kanter v. Warner-Lambert Co.*, 265 F.3d

2  853, 857 (9th Cir. 2001). A party's residence may serve as *prima facie* evidence of

3  that party's domicile. *State Farm Mut. Auto. Ins. v. Dyer*, 19 F.3d 514, 520 (10th Cir.

4  1994). Here, Plaintiff alleges that he "is a resident of the State of California, in San

5  Diego County." (Compl. ¶ 8.) Plaintiff also alleges he was employed by and

6  performed his work for Defendant U.S. Bank National Association in the State of

7  California for approximately 14 years. (Compl. ¶ 13.)

8          9.    In fact, Plaintiff *currently works* as a branch manager of U.S. Bank

9  National Association's Carlsbad Village branch office in Carlsbad, California.

10  Further, based on information that Plaintiff submitted to Defendant U.S. Bank

11  National Association throughout the course of his employment, Plaintiff has

12  consistently listed a home address located in California as his current address. Indeed,

13  Plaintiff's current home address on file with U.S, Bank National Association is in

14  California. This demonstrates his "intention to remain" in California and establishes

15  domicile in California. *See Wilson v. CitiMortgage*, No. 5:13-CV-02294-ODW SP,

16  2013 WL 6871822, at *2 (C.D. Cal. Dec. 17, 2013) (noting that other objective facts,

17  including plaintiff's place of employment, may further establish a plaintiff's

18  citizenship for purposes of removal). Plaintiff is therefore a citizen, domiciliary, and

19  resident of the State of California.

20          **B.**    **Defendants are not Citizens of California.**

21          10.    Defendant U.S. Bank National Association was at the time of the filing of

22  this action, and still is, a citizen of a state other than California. U.S. Bank National

23  Association was and is a national banking association with its main office in

24  Cincinnati, Ohio. Accordingly, U.S. Bank National Association was and is a citizen of

25  Ohio. *See* 28 U.S.C. § 1348 ("All national banking associations shall, for purposes of

26  all other actions by or against them, be deemed citizens of the States in which they are

27  respectively located"); *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006) (holding

28

1  that a national bank, for purposes of 28 U.S.C. § 1348, "is a citizen of the state in

2  which its main office, as set forth in its articles of association, is located").

3       11.    Defendant U.S. Bancorp was, at the time of the filing of this action, and

4  still is, a citizen of a state other than California. As alleged, in part, in Plaintiff's

5  Complaint, Defendant U.S. Bancorp is a citizen of the states of Delaware and

6  Minnesota. (Compl. ¶ 10.) A corporation is deemed to be a citizen of the state in

7  which it was incorporated and of the state where it has its principal place of business.

8  28 U.S.C. § 1332(c). Under the "nerve center" test, a corporation's principal place of

9  business is "the place where a corporation's officers direct, control, and coordinate the

10  corporation's activities." *Hertz Corp. v. Friend, et al.*, 599 U.S. 77, 80-81, 91-93

11  (2010). U.S. Bancorp was and is a citizen of Delaware (its state of incorporation) and

12  Minnesota (its headquarters). *See* 28 U.S.C. § 1332(c)(1) ("a corporation shall be

13  deemed to be a citizen of every State foreign state by which it has been incorporated

14  and of the State or foreign state where it has its principal place of business . . . .").[1]

15       12.    It appears from the caption of the Complaint that only U.S. Bank

16  National Association and U.S. Bancorp are defendants in this matter. The caption also

17  lists "DOES 1 through 10, Inclusive" as defendants. There are no "Doe Defendants"

18  in federal district court. For purposes of removal, "the citizenship of defendants sued

19  under fictitious names *shall* be disregarded." 28 USC § 1441(b)(1) (emphasis added).

20  Codefendants not served need not join in the removal for removal to be proper.

21  *Destino v. Reiswig*, 630 F.3d 952, 955-57 (9th Cir. 2011).

22       13.    Complete diversity of citizenship thus exists in accordance with

23  28 U.S.C. § 1332(a)(1) because Plaintiff has been a California citizen at all relevant

24  times, Defendants have been citizens of states other than California at all relevant

25  times, and no other defendant has yet been served.

---

[1] Plaintiff was not employed by U.S. Bancorp, but rather by U.S. Bank National Association. Thus, U.S. Bancorp is improperly named as a defendant in this action.

**C.** **Amount in Controversy Exceeds $75,000**

14.     Plaintiff does not specifically allege an amount in damages in the Complaint; nor does he allege that the amount in controversy is less than $75,000. Where a complaint does not state a total amount in controversy, the defendant need only show, by a preponderance of the evidence, that the amount in controversy requirement has been met. *Caus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992); *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936). As the Ninth Circuit has explained, "[t]he amount in controversy is simply an estimate of the total amount in dispute." *Lewis v. Verizon Comm., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). Defendants vigorously deny the merits of Plaintiff's claims, the theories upon which he seeks to recover, and that he is entitled to any damages whatsoever; however, for the sole purpose of determining whether diversity jurisdiction exists, it is more likely than not that the amount in controversy for Plaintiff exceeds $75,000.

**i.** **Written Settlement Demand Exceeds $75,000.**

15.     On February 11, 2022, Plaintiff's counsel sent Defendants a **written settlement demand** via email stating that Plaintiff "has authorized us to present an opening [settlement] demand of $275,000." (Declaration of Emilie C. Woodhead ["Woodhead Decl."] ¶ 2, Ex. 1.)[2] The settlement demand email represents that "[t]his opening demand is not reflective of all damages [Plaintiff] has incurred as a result of his claims. . . we anticipate damages to be much higher." (Woodhead Decl. ¶ 2, Ex. 1.) Accordingly, by plaintiff's *own calculation and settlement demand*, the amount in controversy exceeds $275,000, and therefore far exceeds the $75,000 jurisdictional minimum, excluding interests and costs.

[2] The Ninth Circuit has held that Fed. R. Evid. 408 does not prohibit the use of settlement offers in determining the amount in controversy. *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 n.3 (9th Cir. 2002). The written settlement offer is not being offered to establish the amount of Defendants' liability in this case.

16.     A written settlement demand is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim. *See Cohn v. Petsmart, Inc.*, 281 F.3d 837, 839-40 (9th Cir. 2002) (denying Plaintiff's motion to remand and finding that Defendant's reliance "on a single piece of evidence: a letter from [Plaintiff to Defendant] offering to settle the dispute…was sufficient to establish the amount in controversy"). Plaintiff's settlement demand represents that he anticipates damages to exceed $275,000. Based on Plaintiff's representations, the settlement demand of $275,000 should be considered a reasonable estimate of the amount in controversy for purposes of removal.

ii.    **The Amount in Controversy Exceeds $75,000 Based on the Allegations of the Complaint.**

17.     In determining whether the amount in controversy exceeds $75,000, the Court must presume that Plaintiff will prevail on each and every one of his claims. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (citing *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1096 (11th Cir. 1994) (the amount in controversy analysis presumes that "plaintiff prevails on liability"); *Angus v. Shiley Inc.*, 989 F.2d 142, 146 (3d Cir. 1993) ("the amount in controversy is not measured by the low end of an open-ended claim, but rather by reasonable reading of the value of the rights being litigated").

18.     Plaintiff's Complaint alleges Plaintiff is entitled to recover money damages, including compensatory damages, general damages, special damages, restitution, liquidated damages, statutory penalties under the California Labor Code, civil penalties, and attorneys' fees. (Compl. ¶¶ 42-113; Prayer ¶¶ 1 (a)-(j).) These are all properly considered in the amount in controversy.

19.     Plaintiff was paid a salary as a U.S. Bank Branch Manager. Breaking that salary down into an hourly rate (based on 40 hours per week), the approximate

average hourly rate of pay for Plaintiff during the relevant period[3] is $42.87. Were Plaintiff entitled to overtime, which Defendants deny as Plaintiff was correctly classified as an exempt employee, the average hourly overtime rate would be $64.30. In the aggregate, Plaintiff worked approximately 210 total workweeks during the relevant time period and approximately 105 pay periods.

20.   **Unpaid Wages**. Among other monetary relief, Plaintiff seeks to recover unpaid regular wages and unpaid overtime wages. (Compl. ¶¶ 42-53.) Specifically Plaintiff alleges that "throughout his employment, Plaintiff performed services which were not compensated, and worked in excess of eight hours per day and forty hours a week to which he was not paid overtime." (Compl. ¶ 44). Plaintiff states that Defendants failed to "pay regular and overtime wages" in "violation of Labor Code §§ 204, 510, 1194, 1198, and I.W. C. Wage Order No. 4-2001."  (Compl. ¶ 45-46). Plaintiff alleges that Defendants "had a pattern, practice, and uniform administration of corporate policy regarding illegal employee compensation" and that Defendants "had a consistent and uniform policy, practice, and procedure of willfully failing to pay the earned and unpaid wages of Plaintiff . . ." (Compl. ¶¶ 51-52.) Since Plaintiff alleges that Defendants' wage policies and/or practices were uniform, it is reasonable for purposes of removal to assign a violation to every week that Plaintiff worked and calculate damages sought based on that *See Holcomb v. Weiser Security Services, Inc.*, 424 F. Supp. 3d 840, 845 (C.D. Cal. Dec. 3, 2019) (finding it reasonable to assume a 100% violation rate if the complaint assumes a uniform practice.) Assigning Plaintiff two (2) hours of overtime each week, for purposes of removal, is conservative based

---

[3] Plaintiff alleges that all of Defendants' "violations of the California Labor Code serve as predicate violations of the UCL's proscription against unlawful business acts or practices." (Compl. ¶ 100.) Pursuant to Cal. Bus. & Prof. Code § 17208, "[a]ny action to enforce any cause of action pursuant to this chapter shall be commenced within four years after the cause of action accrued." Accordingly, the relevant time period for Plaintiff's claims for unpaid wages and meal and rest period violations is April 28, 2018 to the present.

on the allegations that Plaintiff worked in excess of eight hours *per day "throughout his employment."* (Compl. ¶ 44). This makes the amount in controversy for Plaintiff's unpaid wage claims at least **$27,006** (2 hours of unpaid overtime each week x $64.30 average hourly overtime rate x 210 workweeks= $27,006) for the relevant time period.

21.   **Meal Period Violations.** Plaintiff also seeks to recover one additional "hour of pay at the employee's regular rate of compensation" for each day where Plaintiff worked five or more hours in a single day and was not provided a duty-free meal period. (Compl. ¶¶ 59, 62.) Although the Complaint does not allege the specific number of meal periods Plaintiff claims he was allegedly not provided per week, it does allege that "Defendants have regularly failed to provide Plaintiff meal periods as required by law." (Compl. ¶ 61.) For the purposes of removal, Defendants conservatively assign only one (1) meal period violation per week based on the relevant allegations of the Complaint. *See Garza v. Brinderson Constructors, Inc.,* No. 15-cv-026610RMW, 2016 WL 1298390, at *3 (N.D. Cal. Apr. 4, 2016) (holding defendant's assumption of one violation per week was reasonable where plaintiff alleged that he regularly missed meal breaks); *Arreola v. Finish Line*, No. 14-cv-03339-LHK, 2014 WL 6982571, at * 4 (N.D. Cal. Dec. 9, 2014) (finding that pleading "regular or consistent practice" supports assumption that every class member "experienced at least one violation per week"). Assigning Plaintiff only one (1) meal period violation per week during the relevant time period, the amount in controversy for this claim is **$9,003** (one (1) violation per week x $42.87 per hour x 210 work weeks), increasing the total amount in controversy for Plaintiff's claims for unpaid wages and missed meal periods during the relevant time period to at least **$36,009**.

22.   **Rest Period Violations.**  Plaintiff also seeks to recover one additional "hour of pay at the employee's regular rate of compensation for each workday that [a] rest period [was] not provided." (Compl. ¶ 68.) Again, while the Complaint does not specify the exact number of rest periods Plaintiff claims that he was allegedly not provided per week, Plaintiff does allege that "Defendants have regularly failed to

provide Plaintiff rest periods as required by law." (Compl. ¶ 70.) For the purposes of removal, Defendants conservatively assigns Plaintiff only one (1) rest break violation per week based on the relevant allegations of the Complaint. *See Garza*, 2016 WL 1298390 at *3; *Arreola v. Finish Line*, 2014 WL 6982571 at * 4. Assigning Plaintiff only one (1) rest break violation per week during the relevant time period, the amount in controversy for this claim is **$9,003** (one (1) violation per week x $42.87 per hour x 210 work weeks), increasing the total amount in controversy for Plaintiff's claims for unpaid wages, missed meal periods, and missed rest periods during the relevant time period to at least **$45,012**.

23.    **Failure to Provide Accurate Itemized Wage Statements.** Statutory penalties may also be included when determining the amount in controversy.  *See Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1009 (N.D. Cal. 2002) (penalties under California's Song-Beverly Consumer Warrant Act may be counted in determining the amount in controversy); *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F. 2d 1167, 1168 (6th Cir. 1975) ("It is settled that the statutory penalty and a statutory attorneys' fees can be considered in determining whether the jurisdictional amount is met.").[4]

24.    Under Cal. Labor Code 226(e)(1) an employee "suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000)."

25.    Here the Complaint alleges that Defendants knowingly and intentionally failed to comply with Cal. Labor Code § 226(a) on *each and every* wage statement

---

[4] As a penalty, claims under Cal. Labor Code § 226 are governed by the one-year statute of limitations of Cal. Code of Civil Procedure § 340. Employees receive twenty-six paychecks per year with a biweekly pay schedule.

provided to Plaintiff.  (Compl. ¶ 74.) (emphasis added).   Given Plaintiff's contention that each and every wage statement provided to him during his tenure at U.S. Bank was defective, Plaintiff would be entitled to at least **$2,850** for the twenty-nine bi-weekly wage statements dating from April 28, 2021 (one year before the filing of the Complaint) until the time of removal. Accordingly, the total amount in controversy for Plaintiff's claims for unpaid wages, missed meal periods, missed rest periods, and failure to provide accurate itemized wage statements is at least **$47,862**.

26.   **Retaliation**. Plaintiff alleges that Defendants retaliated against him under Cal. Labor Code § 98.6 for "exercising his rights under California labor laws" and raising "concerns [about] safety protocols in the midst of the COVID-19 pandemic including capacity and staffing issues related to Plaintiff's branch location as well as relevant personal health concerns." (Compl. ¶ 103.) In addition to emotional distress, compensatory damages, and other economic damages (Compl. ¶¶ 104-105), Plaintiff seeks a civil penalty under Cal. Lab. Code § 98.6(b)(3), which states that "an employer who violates this section is liable for a civil penalty not exceeding ten thousand dollars ($10,000) per employee for each violation of this section, to be awarded to the employee or employees who suffered the violation." Plaintiff pleads that he seeks the civil penalty of up to $10,0000 for "each violation" of Cal. Labor Code § 98.6 (Compl. ¶¶ 104-207), making clear that he is seeking at least one, if not more, civil penalties of **$10,000** each. Thus, the amount in controversy for this Cal. Labor Code § 98.6 civil penalty sought by Plaintiff is at least **$10,000**. *See Kenneth Rothschild Trust*, 199 F. Supp. 2d at 1001 (the amount in controversy analysis presumes that "plaintiff prevails on liability"). Accordingly, the total amount in controversy for Plaintiff's claims for unpaid wages, missed meal periods, missed rest periods, failure to provide accurate itemized wage statements, and civil penalties for just one violation Cal. Labor Code § 98.6 is at least **$57,862**.

27.   **Attorney's Fees**. Plaintiff seeks an unspecified amount of attorneys' fees. (FAC at Prayer.) Attorneys' fees are properly considered when determining the

amount in controversy for the purposes of removal. *See Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) ("where an underlying statute authorizes an award of attorneys' fees . . . such fees may be included in the amount in controversy"). This includes future attorneys' fees as well as attorneys' fees incurred prior to removal. *Kee v. Hiossen, Inc.*, No.: 19-cv-1440-WQH-BLM, 2019 WL 5677845, * 3 (S.D. Cal. Nov. 1, 2019); *Fritsch v. Swift Transportation Co. of Arizona, LLC,* 899 F.3d 785, 794 (9th Cir. 2018) (holding that a court must include future attorneys' fees recoverable by statute or contract when assessing whether the amount in controversy is met.  Plaintiff seeks attorneys' fees pursuant to, *inter alia*, Labor Code sections 98.6, 218. 218.5, 226(e), 1194, 1198, 1199, 2802 and Civil Code section 1021.5. (*See*, e.g., Compl., Prayer.) Pursuant to Cal. Labor Code § 218.5(a), "the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action." If Plaintiff's attorneys spend just 300 hours litigating this case through the merits at a rate of $300 per hour, the attorneys' fees alone would total $90,000 should Plaintiff prevail and be awarded attorneys' fees, exceeding the amount in controversy requirement. *See Adkins v. J.B. Hunt Transp., Inc.*, 293 F. Supp. 3d 1140, 1148 (E.D. Cal. 2018) (citations omitted) ("a reasonable rate for employment cases is $300 per hour"). Taking a more conservative approach, Courts have stated that "100 hours is an appropriate and conservative estimate" of the number of hours expended through trial for an employment action. *Id.* at 1148 (citations omitted); *see Garcia v. Commonwealth Financial Network*, 2020 WL 6886267, * 9 (S.D. Cal. Nov. 24, 2020) (same). Thus, in a conservative estimate, **Plaintiff's attorneys' fees sought are at least <u>$30,000</u>**.

28.    Therefore, the total amount in controversy at issue based <u>solely</u> on Plaintiff's claims for unpaid wages, missed meal periods and rest periods, statutory penalties for failure to provide accurate itemized wage statements, one instance of civil penalties under Cal. Labor Code § 98.6, and a conservative estimate of attorney's

1  fees is **at least $87,862** ($57,862 + $30,000), which exceeds the jurisdictional
2  minimum for removal.

3      29.   Plaintiff's written settlement demand reflects that Plaintiff estimates his
4  claim to be above $275,000. Indeed, based on Plaintiff's allegations, he could seek
5  more than the $87,862 calculated above. Based on Plaintiff's allegations, he could
6  seek (*inter alia*) more than two overtime hours per week, more than one meal period
7  premium per week, more than one rest period premium per week, additional civil
8  penalties of up to $10,000 per violation of Cal. Labor Code § 98.6, and more
9  attorneys' fees. **Based on Plaintiff's allegations, he is expressly seeking the**
10 **following damages that were not calculated above**: alleged **additional civil**
11 **penalties** for the alleged failure to maintain accurate records; allegedly **unreimbursed**
12 **business expenses**; alleged compensatory damages and damages due to **emotional**
13 **distress** for the alleged violations of Cal. Labor Code § 98.6; alleged compensatory
14 damages for **lost earnings** and damages due to emotional distress for the alleged
15 violation of Cal. Labor Code § 1102.5, and **liquidated damages** pursuant to Cal.
16 Labor Code §§ 1994 and 29 U.S.C. § 216. (*See* Compl. at ¶¶ 85, 94, 104, 105, 111,
17 112; Prayer). This also supports the conclusion that the settlement demand of
18 $275,000 should be considered a reasonable estimate of the amount in controversy for
19 purposes of removal. Accordingly, the amount in controversy far exceeds the
20 $75,000.00 jurisdictional minimum set forth in 28 U.S.C. § 1332(a), excluding interest
21 and costs.

22      **D.   Compliance with Statutory Requirements**

23      30.   Pursuant to 28 U.S.C. § 1446(a), Defendants attach hereto a true and
24 correct copy of the Summons and Complaint and the executed Notice and
25 Acknowledgment of Receipt of Summons and Complaint as Exhibit "A." A true and
26 correct copy of Defendants U.S. Bank National Association and U.S. Bancorp's
27 Answer to Plaintiff's Complaint is attached hereto as Exhibit "B." A true and correct
28 copy of the state court Civil Case Cover Sheet is attached hereto as Exhibit "C." These

are the only process, pleadings, or orders in the State Court's file that have been served on Defendants and/or that Defendants have served up to the date of filing this Notice of Removal.

31.    In accordance with 28 U.S.C. § 1446(b), this Notice is timely filed with this Court. Pursuant to 28 U.S.C. § 1446(b), "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based. . . ."  Service was effected when Defendants returned the Notice and Acknowledgment of Receipt of Summons and Complaint on May 26, 2022.  (*See* Ex. A.) This Notice of Removal was filed 29 days later on June 24, 2022. Accordingly, this Notice is timely.

32.    As required by 28 U.S.C. § 1446(d), Defendants will provide written notice of the filing of this Notice of Removal to Plaintiff's attorneys of record and will promptly file a copy of this Notice of Removal with the Clerk for the Superior Court of the State of California in and for the County of San Diego.

33.    **WHEREFORE**, Defendants request that these proceedings, entitled *Lorin D. Haskin v. U.S. Bank National Association, et al.*, Case No. 37-2022-00015917-CU-OE-CTL, currently pending in the Superior Court of California in and for the County of San Diego, be removed to this Court.

Dated: June 23, 2022                     WINSTON & STRAWN LLP


                                         By:  /s/ *Emilie C. Woodhead*
                                              Joan B. Tucker Fife
                                              Emilie C. Woodhead
                                              Tristan R. Kirk
                                              Rachel A. D. Busch
                                              Attorneys for Defendants
                                              U.S. BANK NATIONAL ASSOCIATION
                                              AND U.S. BANCORP

DEFENDANTS' NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT